*11*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATLAS OIL COMPANY,
a Michigan corporation,

                Plaintiff,

-vs-

MICRO-DESIGN, INC.,
a Texas corporation

                Defendant,

and

MICRO-DESIGN, INC.,

                Counterclaim-Plaintiff,

-vs-

ATLAS OIL COMPANY,

                Counterclaim-Defendant.

_____/

Civil No. 2:08-cv-12467
Hon. John Feikens

FILED
FEB 17 2009
CLERK'S OFFICE
DETROIT

## ORDER DENYING DEFENDANT'S 28 U.S.C. § 1404 MOTION TO TRANSFER

## OVERVIEW

This case originated in Wayne County Circuit Court where Atlas Oil Company ("Atlas") sued Micro-Design, Inc. ("MDI") for breach of contract. MDI removed the case to this Court under diversity jurisdiction. MDI now requests that this Court to transfer the case to the Northern District of Texas. For the reasons set forth below, I DENY MDI's motion to transfer.

## FACTS

Atlas is a Michigan corporation with its headquarters in Wayne County. MDI is a Texas corporation. Atlas's Commercial Division sells and delivers fuel and provides onsite equipment to customers who require significant quantities of gasoline and diesel fuel to operate their businesses. Atlas and MDI entered into a "Remote Monitoring Equipment and Service Proposal and Agreement for Atlas Oil Company" (the "Contract"). Under the Contract, MDI sold Atlas a tank monitoring system that would allow Atlas to remotely monitor the levels of gasoline and diesel fuel contained in the above-ground storage tanks that Atlas's customers owned or leased. The Contract contains a provision stating that it is governed by Texas law, as well as a forum-selection clause, which states that "[t]he parties consent to jurisdiction and venue for any dispute arising from or related to this Agreement in the state and federal courts located in Dallas County, Texas." Pursuant to the Contract, Atlas purchased and MDI delivered approximately 300 monitoring units; however, Atlas alleges that these units never worked properly after installation and that, as a result, MDI has breached the Contract.

Atlas filed its Complaint in the Circuit Court of Wayne County on May 14, 2008, alleging breach of contract and breach of warranty. MDI removed the case to the Eastern District of Michigan under diversity jurisdiction. On June 11, 2008, MDI brought a counterclaim against

Atlas, claiming that Atlas has failed to pay money due under the Contract. On June 12, 2008, MDI submitted Defendant's 28 U.S.C. § 1404 Motion to Transfer and Brief in Support. This Court ordered further briefing on the issue of whether the forum-selection clause contained in the Contract requires that this Court transfer the case to the Northern District of Texas. The Court held a hearing on MDI's motion to transfer on October 22, 2008, and ordered the parties to brief the differences between Texas and Michigan law with regard to the issues this case presents. The parties have submitted all of the briefs required by this Court and this Court has reviewed these briefs and the accompanying documents.

## STANDARD AND ANALYSIS

### I) The Standard for a Motion to Transfer

MDI moves to transfer this case to the Northern District of Texas under 28 U.S.C.A. §1404. Section 1404 provides that a district court, "for the convenience of parties and witnesses, in the interest of justice . . . may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To transfer an action, the action must meet three criteria: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." McCuiston v. Hoffa, 313 F. Supp. 2d 710, 719 (E.D. Mich. 2004) (Feikens, J.). Because of the existence of the forum selection clause, Atlas does not, and cannot contest that this case could have been brought in the Northern District of Texas.

Even though this case could have been brought in the Northern District of Texas, this Court must still consider whether a transfer serves the interest of justice, and the convenience of the witnesses and parties. In determining what best serves these considerations, this Court must weigh the following factors: (1) the convenience of the parties; (2) the convenience of the

witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. Id. Additionally, a choice of law provision that would require a court to apply foreign law that is complex or unsettled can weigh in favor of transfer. See Houk v. Kimberly-Clark Corp., 613 F. Supp. 923, 932 (D.C. Mo. 1985).

Generally, "a plaintiff's choice of forum will be given deference unless the defendant makes an appropriate showing." Id. (quoting Audi AG & Volkswagen of America v. Izumi, 204 F. Supp. 2d 1014, 1023 (E.D.Mich.2002)). Also, the convenience of the witnesses is sometimes considered "the most powerful factor governing the decision of whether to transfer a case." 17 Moore's Federal Practice, § 111.13[1][f][i]. The determination of the relative levels of inconvenience "rest[s] within the sound judicial discretion of the district judge." Nicol v. Koscinski, 188 F.2d 537, 538 (6th Cir.1951). However, "[t]ransfer is not appropriate if the result is simply to shift the inconvenience from one party to another." Audi AG & Volkswagen of America, Inc., 204 F. Supp. 2d at 1023.

## II) Analysis of MDI's Motion to Transfer

### A) This Court Refuses to Afford the Permissive Forum Selection Clause Great Weight Under § 1404

The Contract's forum selection clause reads as follows: "This Agreement shall be governed by and interpreted in accordance with the laws of the State of Texas. The parties consent to jurisdiction and venue for any dispute arising from or related to this Agreement in the state and federal courts located in Dallas County, Texas." This Court asked the parties to submit briefs answering the following question: "is the wording of the forum selection clause mandatory

in the sense that if a party to the contract desires to have a claim arising from the contract litigated in the Northern District of Texas, the case must be transferred to that district?" The parties agree that the forum selection clause does not demand a transfer of this case, and thus, agree that it is permissive and not mandatory. Both parties also agree that a permissive forum selection clause is just one factor a court should consider in the §1404 transfer analysis. Therefore, the relevant inquiry is the weight that this Court should give to the permissive forum selection clause in determining whether to transfer the case.

Sixth Circuit has not yet addressed the question of how much weight a court should afford a permissive forum selection clause. Atlas, however, cites a number of cases from outside the Sixth Circuit that indicate that courts consider a permissive forum selection clause to be a relatively minor factor in the transfer analysis. For instance, in determining the effect of permissive clauses on a § 1404 analysis, the court in Dorsey v. Northern Life Insurance, Co. stated that "when a forum selection clause is permissive rather than mandatory, courts accord less weight to the forum selection clause or decline to shift the burden of demonstrating that transfer is warranted to the party resisting transfer." 2005 WL 78937, *4-7 (E.D. La. 2005) (concluding that the transfer factors weighed in favor of retaining jurisdiction); see also SoftwareWorks Group, Inc. v. IHosting, Inc., 2006 WL 2850026, *3 (N.D. Cal. 2006) (finding that "permissive clauses do not preclude the action from being litigated in another court"); Watson v. John K. Burch Co., 2003 WL 21145744, *4 (N.D. Tex. 2003) (holding that "[g]iven the permissive nature of the forum selection clause, the court refuses to give significant weight to the contractual provision, and as such does not shift the burden of persuasion to Watson as it would if a mandatory forum selection clause were involved.").

MDI argues that this Court should afford the permissive clause more weight because it

reflects the parties' agreement to litigate the case in Texas.  However, as explained above, there was no such agreement, because the forum selection clause is permissive, not mandatory.  A permissive clause authorizes jurisdiction and venue in a designated forum, but does not prohibit litigation elsewhere.  Thus, while the forum selection clause is an admission by Atlas that the Northern District of Texas is an acceptable venue, the clause does not constitutes an agreement to litigate there.  As a result, this Court will only consider the permissive forum selection clause within the framework of the Sixth Circuit § 1404 factors and will not shift the burden of demonstrating that this Court is the proper venue to Atlas.

## B) The § 1404 Factors Weigh in Favor of Retaining Jurisdiction

### 1) The convenience of the parties

The convenience of the parties does not weigh in favor of or against transfer.  Atlas is a Michigan corporation and MDI is a Texas corporation.  Atlas consented to jurisdiction in Texas under the permissive forum selection clause; however, MDI has availed itself of Michigan law by doing business in the state.  Transferring this case to Texas would simply shift the inconvenience from MDI to Atlas, which the Eastern District of Michigan has held is improper.  Audi AG & Volkswagen of America, 204 F. Supp. 2d at 1023.

### 2) The convenience of the witnesses

As mentioned above, the convenience of the witnesses has been called the most important factor in determining whether to transfer a case. Kelly Services v. Eidnes, 530 F. Supp. 2d 940, 949 (E.D. Mich. 2008).  Here, for each party, the number of employees who are likely to be witnesses is roughly equal: all of MDI's employees with the most knowledge about the monitors and efforts to comply with the contract reside and work in Texas; all of Atlas's employees involved in the project at issue live in Michigan.  The total inconvenience to these employees is

unlikely to change if this Court transfers this case to Texas. However, the convenience of the non-party witnesses favors this Court retaining jurisdiction. Atlas states that it anticipates that its "witnesses in this case also include a number of the approximately 125 non-party owners and operators of the approximately 230 Michigan properties where Atlas installed the MD[I] tank monitors." Atlas's Response to MDI's Motion to Transfer p 12. MDI identifies few witnesses who are not employed by MDI. Thus, because far more non-party witnesses are located in Michigan, the convenience of the witnesses weighs in favor deny's MDI's motion to transfer.

### 3) The relative ease of access to sources of proof

The monitors at issue are currently in Texas, but are fairly small and can be shipped to Michigan. On the other hand, the locations where Atlas installed the monitors are all in Michigan, and Atlas states that the characteristics of these locations will be a key issue. An investigation of the characteristics of these locations will be easier if this case is heard in Michigan. Thus, a Michigan court will be able to access sources of proof with greater ease than will a Texas court. This advantage weighs in favor of denying MDI's motion to transfer.

### 4) The availability of process to compel attendance of unwilling witnesses

There is no evidence that the number of employee witnesses is greater in either Texas or Michigan. However, most of the likely non-party witnesses are in Michigan. Thus, while some witnesses will likely fall outside of subpoena power in either forum, this Court will have power over more witnesses than would a Texas court. I find that this factor weighs in favor of denying MDI's motion to transfer.

### 5) The cost of obtaining willing witnesses

As stated above, there are numerous potential witnesses in Michigan who do not work for either party, and as a result, there are far more likely witnesses in Michigan as a whole.

Transporting Michgan witnesses to Texas will be more costly than transporting the Texas witnesses to Michigan. Thus, this factor favors denying MDI's motion to transfer.

6) <u>The practical problems associated with trying the case most expeditiously and inexpensively</u>

The locations where Atlas installed the monitors, which are all in Michigan, are likely to be subject to discovery in this case. The close proximity of this Court to this evidence is advantageous: the individuals who are either currently involved or who may become involved in this case–such as counsel, jurors, or experts–will be more easily able to inspect these sites if this case is litigated in Michigan. MDI argues that some evidence, such as the monitors at issue, is still located in Texas. Still, unlike the installation sites, these monitors can be transported easily. Thus, this case can be most expeditiously and inexpensively tried in Michigan, and this factor weighs in favor of this Court denying MDI's motion to transfer.

7) <u>The interest of justice</u>

MDI argues that the interest of justice favors enforcing the parties' choice of Texas as the proper venue. However, as evinced by MDI's concurrence that the forum selection clause is permissive, the Contract does not require that the Northern District of Texas is the only proper venue. The Contract instead states that Texas would be a proper venue. Therefore, the existence of the forum selection clause does not indicate that the interest of justice favors transfer. Additionally, this Court can think of no other reason why transfer would best serve the interest of justice. Thus, the interest of justice does not weigh in favor of or against transfer.

8) <u>The application of foreign law</u>

Courts usually do not consider the application of foreign law to be an important factor in a § 1404 transfer analysis. For instance, in the case of <u>Viron Intern. Corp. v. David Boland, Inc.</u>,

the court held that a choice of law provision, contained in the parties' contract, that demanded the application of foreign law would not affect whether venue was proper:

> The parties' agreements contain a choice of law provision, stating that their contracts are governed by Florida law. Defendants claim that this factor weighs in favor of transfer to the Middle District of Florida. The Court disagrees. This case involves a breach of contract for the sale of goods. . . . While the law of Michigan and Florida are not identical in terms of the law of contracts, the adoption of the Uniform Commercial Code by both states certainly suggests that a federal court sitting in diversity in Michigan is no less competent to rule on the parties' contractual dispute than a federal court sitting in diversity in Florida. Thus, this factor is neutral, neither weighing in favor of transfer nor in favor of keeping the litigation in this Court.

237 F. Supp. 2d 812 (W.D. Mich. 2002) (internal citations omitted).  A court may be less competent to rule on a contractual dispute if the foreign law is complex or unsettled.  See Houk, 613 F. Supp. at 932.

Here, the relevant sections of Texas and Michigan law appear to be quite similar.  Both states have adopted the Uniform Commercial Code, and as a result, the provisions of Texas law at issue are extremely similar to the parallel Michigan laws.  Further, Texas law obliges Texas courts to make interpretation of the UCC as uniform as possible among the states, Financial Universial Corp. v. Mercantile Nat'l Bank at Dallas, 683 S.W.2d 815, 817 (Tex. Ct. App. 1984), and Texas courts look to other jurisdictions in interpreting provisions of the UCC, Rogers v. Ricane Enterprise, Inc., 930 S.W.3d 157, 171 (Tex. Ct. App. 1996).  Similarly, the Michigan Court of Appeals has stated that "[w]hen interpreting uniform laws, such as the UCC, we may look to decisions from other states for guidance." Check Reporting Svcs., Inc. v. Michigan Nat'l Bank-Lansing, 191 Mich. App. 614, 623 (1991).

MDI, in its brief, only identifies three specific differences between relevant Michigan and Texas law: attorneys' fees, limitations on remedies, and allocation of fault.

First, MDI states that "[u]nlike Michigan, Texas has a statute that permits a party to

recover attorneys' fees in certain breach of contract actions." MDI, however, fails to identify why it would be difficult for this Court to interpret this law. The relevant section of Texas law, Texas Civil Practice & Remedies Code, section 38.001, states:

RECOVERY OF ATTORNEY'S FEES. A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

(1) rendered services;
(2) performed labor;
(3) furnished material;
(4) freight or express overcharges;
(5) lost or damaged freight or express;
(6) killed or injured stock;
(7) a sworn account; or
(8) an oral or written contract.

Section 38.001 is clear and will not be difficult for this Court to interpret.

Second, MDI states that Michigan and Texas law differ "considerably on the issue of when a remedy 'fails in its essential purpose.'" MDI is able to easily describe the significance of this difference:

Here, the parties' contract limits . . . Atlas's remedy for any breach of the agreement. . . . Under Michigan law, it is not clear whether this limitation on Atlas's remedy would be enforced on the facts of this case, because Michigan courts tend to be more willing to find that an exclusive remedy failed and therefore should not be enforced. Texas courts on the other hand will enforce a limited remedy provision, even if the plaintiff is not completely satisfied with the result.

MDI's Third Supplemental Brief at 2-3. However, MDI fails to identify why it would be difficult for this Court to apply Texas law. Indeed, because the Texas law clearly requires the enforcement of a limited remedy even if the plaintiff is not satisfied, the Texas law is easier to apply than the more undefined Michigan law.

Third, MDI states that under Texas law, a jury must apportion fault in a breach of warranty case where the plaintiff's negligence is a concurring proximate cause of any alleged

damages. MDI adds that Michigan does not have a similar requirement. MDI argues that this difference is important because MDI is maintaining that Atlas Oil's negligence caused the monitors to not function properly. If Atlas's negligence is a concurring proximate cause of any alleged damages, then Texas law, but not Michigan law, would demand that a jury apportion fault. Once again, however, MDI fails to show why this would weigh in favor of transfer. There is no evidence that the law of apportioning fault would be difficult for this Court to grasp.

Since relevant Texas law is not significantly different than Michigan law, and because this Court is no less competent to rule on the parties' contractual dispute than a federal court in Texas, the application of foreign law does not weigh in favor of transfer.

## CONCLUSION

For the reasons stated above, I DENY Defendant's 28 U.S.C. § 1404 Motion to Transfer.

**IT IS SO ORDERED.**


Date: _Feb 17, 2009_

_John Feikens_
United States District Judge